**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **MICHAEL TULLGREN,** | |
| **Plaintiff,** | **Case No: 1:22-cv-856-MSN-IDD** |
| **v.** | |
| **BOOZ ALLEN HAMILTON INC.,** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Matthew J. Sharbaugh, VSB 91219
Frank H. Williams, III (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
matthew.sharbaugh@morganlewis.com
frank.williams@morganlewis.com

Jeremy P. Blumenfeld (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
T: (215) 963-5000
F: (215) 963-5001
jeremy.blumenfeld@morganlewis.com

Sean K. McMahan (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1717 Main St., Suite 3200
Dallas, TX 75201
T: (214) 466-4102
sean.mcmahan@morganlewis.com

*Counsel for Defendants*

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF FACTS ..................................................................................... 4

    A.   The Plan. ........................................................................................................ 4

    B.   Target-Date Funds. ....................................................................................... 5

    C.   The BlackRock and Comparator TDFs......................................................... 7

        1.   The BlackRock TDFs. ........................................................................ 7

        2.   The Comparator TDFs. ....................................................................... 8

III.    ARGUMENT ...................................................................................................... 10

    A.   Standard of Review........................................................................................ 10

    B.   The Complaint's Allegations, Even Accepted as True, Fail to State a Plausible
        Claim That Booz Allen Breached ERISA's Duty of Prudence. .......................... 11

        1.   Plaintiff Fails to Plausibly Allege That the Comparator TDFs Are
            Meaningful Benchmarks and Comparators to the BlackRock TDFs........ 12

        2.   Even If Plaintiff Had Pled Meaningful Benchmarks, the Court Cannot
            Infer Imprudence Merely Because the BlackRock TDFs Allegedly
            Underperformed a Handful of Other Target-Date Suites. ....................... 17

        3.   Apart From the General Premise That Underperformance Alone Cannot
            Show Imprudence, Plaintiff's Specific Allegations Would Not Suffice,
            Especially Given the Complaint's Recognition That the BlackRock TDFs
            Recently *Outperformed* the Comparator TDFs........................................ 20

    C.   Plaintiff's Secondary Claims Fail as a Matter of Law. ......................................... 23

IV.     CONCLUSION.................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022) ....................................................................10, 11, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................10, 24

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................10

*In re Constellation Energy Grp., Inc.*,
   738 F. Supp. 2d 602 (D. Md. 2010) .................................................................23

*Coyer v. Univar Sols. USA, Inc.*,
   2022 WL 4534791 (N.D. Ill. Sept. 28, 2022) ..................................................24

*Davis v. Salesforce.com Inc.*,
   2021 WL 1428259 (N.D. Cal. Apr. 15, 2021) ..................................................13

*Davis v. Salesforce.com Inc.*,
   2022 WL 1055557 (9th Cir. Apr. 8, 2022) ...........................................13, 14, 15

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020) ...............................................................13, 14, 15, 16

*DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*,
   920 F.2d 457 (7th Cir. 1990) ...........................................................................11

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)................................................................................... *passim*

*Forman v. TriHealth, Inc.*,
   563 F. Supp. 3d 753 (S.D. Ohio 2021), *aff'd in rel. part*, 40 F.4th 443 (6th Cir. 2022) ........21

*Goines v. Valley Cmty. Servs. Bd.*,
   822 F.3d 159 (4th Cir. 2016) ..............................................................................4

*Gonzales v. Northwell Health, Inc.*,
   2022 WL 4639673 (S.D.N.Y. Sept. 30, 2022)..................................................21

*Graham v. Fearon*,
   721 F. App'x 429 (6th Cir. 2018) .....................................................................11

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ............................................................................................16

*Hughes v. Nw. Univ.*,
    142 S. Ct. 737 (2022) ....................................................................................3, 10, 18

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ............................................................................................23

*Meiners v. Wells Fargo*,
    898 F.3d 820 (8th Cir. 2018) ........................................................................... *passim*

*Patterson v. Morgan Stanley*,
    2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ....................................................18, 22

*Plasterers' Loc. Union No. 96 Pension Plan v. Pepper*,
    663 F.3d 210 (4th Cir. 2011) ............................................................................................11

*Smith v. CommonSpirit Health*,
    2021 WL 4097052 (E.D. Ky. Sept. 8, 2021) ..........................................................23

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ........................................................................... *passim*

*PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ..................................................................................11, 16, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................................................4

*Usenko v. MEMC LLC*,
    926 F.3d 468 (8th Cir. 2019) ............................................................................................11

*Wehner v. Genentech Inc.*,
    Case No. 20-cv-6894, Dkt. No. 46 ................................................................................20

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) ........17

**Statutes**

29 U.S.C. § 1002(34) ........................................................................................................4

29 U.S.C. § 1104(a) ....................................................................................................10, 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................... *passim*

## I.   __INTRODUCTION__

This is one of about a dozen new lawsuits filed by the same law firm in courts across the country—including two other cases filed in this District on the same day as this one—alleging the same singular and categorical theory of fiduciary breach under the Employee Retirement Income Security Act ("ERISA").[1] As the lawsuits tell it, the various 401(k) plan fiduciaries being targeted in these cases must have used a deficient process to administer their retirement plans merely because the investment menu they offered to participants included the BlackRock Lifepath Index Target Date Funds (the "BlackRock TDFs")—a low-cost suite of investments that independent analysts recognize as one of the best-rated target-date options available in the market.

More specifically, Plaintiff Michael Tullgren, a former participant in the Booz Allen Hamilton Inc. Employees' Capital Accumulation Plan (the "Plan"), asserts that the Plan's inclusion and retention of the BlackRock TDFs was imprudent because that suite of funds purportedly had lesser investment returns than four other target-date series (the "Comparator TDFs") in the relevant period. In other words, this case hinges on Plaintiff's theory—shaped from the vantage of hindsight—that the Plan could and should have picked investments that he says performed better. His theory, if found viable, would effectively expose all employer-sponsored 401(k) plans to sweeping liability whenever the plan's fiduciaries select anything except investment options that end up generating the very best returns during a time period cherry-picked

---

[1] *Bracalente v. Cisco Sys., Inc.*, No. 22-cv-4417 (N.D. Cal., filed July 29, 2022); *Motz v. Citigroup*, No. 22-cv-965 (D. Conn., filed July 29, 2022); *Kistler v. Stanley Black & Decker*, No. 22-cv-966 (D. Conn., filed July 29, 2022); *Luckett v. Wintrust Fin.*, No. 22-cv-3968 (N.D. Ill., filed July 29, 2022); *Hall v. Cap. One Fin. Corp.*, No. 22-cv-857 (E.D. Va., filed Aug. 1, 2022); *Trauernicht v. Genworth Fin.*, No. 22-cv-532 (E.D. Va., filed Aug. 1, 2022); *Beldock v. Microsoft Corp.*, No. 22-cv-1082 (W.D. Wash., filed Aug. 2, 2022); *Antoine v. Marsh & McLennan*, No. 22-cv-6637 (S.D.N.Y., filed Aug. 4, 2022); *Anderson v. Advance Pubs.*, No. 22-cv-06826 (S.D.N.Y., filed Aug. 10, 2022); *Abel v. CMFG Life Ins.*, No. 22-cv-449 (W.D. Wis., filed Aug. 19, 2022).

by any given plaintiff. ERISA does not impose such liability. Instead, as explained, Plaintiff's claims fail for multiple independent and mutually reinforcing reasons.

*First*, every Court of Appeals to have addressed similar challenges to target-date funds in ERISA plans by comparing them to other target-date funds—including the Sixth, Eighth, and Ninth Circuit—has affirmed Rule 12(b)(6) dismissal of those claims because the alleged comparator target-date funds were not plausibly shown to be "meaningful benchmarks" to the funds being challenged. This Complaint has the same problem. As the Department of Labor ("DOL") has explained, "there are considerable differences among TDFs offered by different providers, even among TDFs with the same target date. For example, TDFs may have different investment strategies, glide paths, and investment-related fees."[2] And here, the Complaint *admits* that the BlackRock TDFs have a different glide path, different equity holdings, and different investment strategies than each of the four Comparator TDFs. This means the Comparator TDFs cannot be "meaningful benchmarks" as a matter of law, and the Complaint fails on this basis alone.

*Second*, even if Plaintiff had alleged meaningful benchmarks (and he does not), he cannot state a plausible imprudence claim merely based on alleged investment underperformance. But that is all this Complaint attempts to do. As the Sixth Circuit recently put it, "[m]erely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022). That holds here, especially since the Complaint alleges there are at least 28 different target-date-fund suites in the market, but only compares the BlackRock TDFs to four of them. Assuming *arguendo* that four out of at least

---

[2] Ex. 1, DOL, *Target Date Retirement Funds–Tips for ERISA Plan Fiduciaries* (Feb. 2013), https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/fact-sheets/target-date-retirement-funds.pdf (last visited Oct. 10, 2022).

28 target-date suites (sometimes) performed better than the BlackRock TDFs, that still permits no inference that the BlackRock TDFs were imprudent or that the fiduciary process for the Plan was flawed. And it certainly does not show that offering those investments fell outside the "range of reasonable judgments" fiduciaries make. *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022).

**Third**, publicly available market ratings and assessments of the BlackRock TDFs squarely undermine any assertion that they were "deplorable" and "vastly inferior" investments, as the Complaint charges. According to the Morningstar 2022 Target-Date Strategy Landscape report (the "Morningstar Report") cited in the Complaint, Morningstar gives the BlackRock TDFs a "Gold" analyst rating, the same as or higher than all the Comparator TDFs. The Complaint's cited Morningstar Report likewise shows that investors continue to flock to—not away from—the BlackRock TDFs, investing tens of billions of new dollars in the funds in the past few years.[3]

**Fourth**, even setting aside all those points, the Complaint's own comparative performance charts fail to support Plaintiff's claims at a more granular level. Those charts focus on modest underperformance of the type that courts have repeatedly found insufficient to support a claim of imprudence. Equally important, the Complaint itself reflects that the BlackRock TDFs *outperformed* many (and sometimes *all*) of the four Comparator TDFs across the three- and five-year periods ending more recently in 2021 and 2022—*i.e.*, across virtually the full putative class period reaching back to 2016. If anything, those allegations are reflective of a strong and prudent process for selecting investments, not evidence of an imprudent fiduciary process.

It is almost always possible to find a better performing investment in the market, especially with the benefit of hindsight. But that does not plausibly support any inference that the Plan's inclusion of the BlackRock TDFs in the investment lineup was a fiduciary breach. If that were the

---

[3] The Morningstar Report (cited in Compl. ¶ 26 n.4) is filed herewith as Exhibit 2.

test, it would expose virtually every 401(k) plan and every plan fiduciary to extensive and costly claims of class-wide fiduciary breach because, under that so-called "test," any enterprising plaintiff's attorney can find an "imprudent" investment in virtually every plan.

For these reasons, Booz Allen Hamilton, Inc., the Board of Trustees of Booz Allen Hamilton Inc. (the "Board"), and the Administrative Committee of the Booz Allen Hamilton Inc. Employees' Capital Accumulation Plan (the "Committee") (together, "Booz Allen") request that the Court dismiss Plaintiff's Complaint in its entirety and with prejudice under Rule 12(b)(6).

## II.   STATEMENT OF FACTS[4]

### A.   The Plan.

The Plan is a participant-directed defined-contribution 401(k) plan established under ERISA, 29 U.S.C. § 1002(34). Compl. ¶ 18. This means that Plan participants can design an individualized retirement portfolio meeting their specific retirement goals from a menu of diversified investments vetted by the Committee. *See id*. The Plan's investment options include various mutual funds, collective trusts, and a self-direct brokerage account, as well as the BlackRock TDFs. *Id.*; *see also* Ex. 3, 2020 Form 5500, Fin. Stmts. at 17. Each participant's account is credited with the participant's contributions, Booz Allen's matching contributions,[5] and their investments earnings, which combine to determine a participant's retirement benefit. Compl. ¶ 18.

---

[4] This summary comes from Plaintiff's allegations or publicly available documents referenced in the Complaint, which are appropriately considered on a Rule 12(b)(6) motion. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). At the Rule 12(b)(6) stage, the Court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Thus, the Court may properly consider here: (1) the Plan's Form 5500 report filed with the DOL; (2) the Morningstar Report; and (3) the public DOL Guidance on target-date funds.

[5] Booz Allen provides its employees with a generous matching contribution—eligible participants receive a 100% match for their voluntary employee contributions up to 6% of eligible compensation. Ex. 3, Fin. Stmts. at 6. In 2020 alone, for instance, Booz Allen contributed more than $161 million in matches. *See* Ex. 3, Fin. Stmts. at 3 ($161,029,679).

###### B.   Target-Date Funds.

As the Complaint describes, the general idea of a target-date fund is to "offer an all-in-one retirement solution through a portfolio of underlying funds that gradually shifts to become more conservative as the assumed retirement year approaches." Compl. ¶ 22. In other words, target-date funds offer a one-stop, long-term investment strategy for participants, and they hold a mix of stocks, bonds, and other investments within one fund. Ex. 1 at 1.

The "target date" refers to a target retirement date. *Id.* For example, the BlackRock 2050 TDF is designed for participants who expect to retire around the year 2050. A series (or "suite") of target date funds typically covers a range of potential retirement dates, generally spaced in five-year increments (*i.e.*, 2020, 2025, and so on, up through 2060 or 2065).

A target-date fund's initial asset allocation—when the target retirement date is decades away—generally consists mostly of equity investments, which have greater potential for higher returns but also can be more volatile and carry greater investment risk. *Id.* Later, as the target retirement date approaches (and sometimes continuing after the target date), the fund's asset allocation shifts or "de-risks" to include a higher proportion of more conservative investments, such as bonds and cash instruments, which generally are less volatile and carry less investment risk than equities. *Id.* As a result, the allocation of a 2050 fund today, for example, will be different from the asset allocation of that same 2050 fund ten years ago or ten years in the future. The shift in asset allocation over time is called the "glide path." *Id.*

As the DOL explains, "[i]t is important to know whether a target date fund's glide path uses a 'to retirement' or a 'through retirement' approach." *Id.*  A target-date fund with a "to" approach reduces the fund's equity exposure over time so that the fund reaches its most conservative point at the target-retirement date—in the example above, 2050. *Id.* Alternatively, a fund utilizing a "through" approach reduces equity exposure *through* and beyond the target

retirement date so that the fund does not reach its most conservative point until years after the retirement date. *Id.* The Complaint summarizes the different strategies as follows: "[t]o strategies are managed to protect against the risk of a market decline significantly diminishing assets, while the through approach focuses on the risk of outliving savings." Compl. ¶ 24.

Different families of target-date funds have other meaningful differences. To start, as with other investments, target-date funds are characterized as either "actively managed" or "passively managed."[6] The Complaint recognizes this important distinction. It alleges that actively managed target-date funds "tend to provide more diversified asset class exposure while offering the potential for excess returns, particularly in less efficient asset classes where active management tends to outperform," whereas passively managed target-date funds, by contrast, are "comprised of primarily or entirely passive strategies [that] provide broad market exposure at minimal cost and avoid the risk of active management underperformance and style drift." *Id*. ¶ 25.

Further, different target-date vintages managed by different companies will hold different percentages of equities, bonds, and other assets. *See id.* ¶¶ 37-38. Said differently, a suite managed by BlackRock might have a higher allocation to equities in its 2050 fund than other 2050 funds managed by Fidelity or T. Rowe Price, but a smaller equity allocation than other suites in its 2025 fund, because it reduces risk over time at a different rate than other target date families. *See id.*

Even more, significant variations likewise exist within the equity or bond components of different target-date portfolios. As the Complaint explains, target-date funds do not select individual securities; instead, they invest in a "portfolio of underlying funds." *Id*. ¶ 22. In other

---

[6] When it comes to actively managed investments, "the portfolio manager actively makes investment decisions and initiates buying and selling of securities in an effort to maximize return" and outperform the market. *CommonSpirit*, 37 F.4th at 1163. Managers of passively managed or "index" funds, by contrast, create "a fixed portfolio structured to match the overall market or a preselected part of it," and their returns typically track their designated market portfolio. *Id.*

words, a target-date fund is a "fund of funds" composed of other equity and bond funds. So even where two different target-date funds of the same vintage might have the same overall percentage of assets allocated to "equities" or "bonds" generally, that says nothing about the specific types of equity funds or bond funds that are included, or the allocation among them. They vary.

As TDFs are investment funds built with other underlying funds, the variations in different types of equity funds within a target-date fund's structure can include, but are not limited to: (a) large cap, small cap, or mid-cap equities; (b) domestic, foreign, or global equities; (c) growth funds, value funds, or blend funds, and (d) combinations of these various funds (*e.g.*, small cap growth funds, large cap value funds).[7] Likewise, the variations in bond funds within a fund structure can include, but are not limited to: core aggregate, short-term TIPS, long TIPS, short-term government, intermediate government, long-term government, short-term bond, intermediate credit, long-term credit, bank loan, securitized, high yield, and non-U.S. varieties.[8]

### C.    The BlackRock and Comparator TDFs

The Complaint describes six different target-date fund series: (a) the Blackrock TDFs that Plaintiff challenges; (b) a Vanguard TDF; (c) an American Funds TDF; (d) a T. Rowe Price TDF; (e) a Fidelity Freedom TDF; and (f) a Fidelity Freedom Index TDF. Compl. ¶ 35.

#### 1.    The BlackRock TDFs.

The BlackRock TDFs use a "to-retirement" glide path,[9] meaning that they are "managed to protect against the risk of a market decline significantly diminishing assets" and de-risk as the target retirement date approaches. Compl. ¶ 25. Additionally, the BlackRock TDFs are passive

---

[7] Morningstar identifies as many as 40 different categories of equity funds.  *See* https://advisor.morningstar.com/Enterprise/VTC/MorningstarGlobalCategory_April2021.pdf.

[8] *See* Ex. 2 at 40 (cited in Compl. ¶ 26 n.4).

[9] *See* Compl. ¶ 39 n.9 (acknowledging that the BlackRock TDFs are "to retirement").

investments; they only invest in underlying passively managed index funds, which "provide broad market exposure at minimal cost and avoid the risk of active management underperformance and style drift." *Id*. They are the third most popular target-date series in the marketplace. *Id.* ¶ 35.

The Complaint alleges the "current" percentage of the BlackRock TDFs that are in "equities" generally, *see id.* ¶ 37 & n. 8, but it says nothing about which types of equity funds are held within that general category or the percentages in: domestic or international equities; large-cap, mid-cap, or small-cap equities; growth stocks or value stocks; or otherwise. The Complaint also says nothing about the BlackRock TDFs' equities holdings at any time other than "current." As Morningstar explains, BlackRock "has long been one of the more aggressive sponsors furthest from retirement. Its target-date offerings, which include the Gold-rated BlackRock LifePath Index series, have started with 99% of assets in equities for years and maintain a higher equity posture relative to the average peer until roughly 10 years to retirement." Ex. 2 at 25.[10]

Significantly, the Complaint alleges zero facts about the percentage of the various BlackRock TDFs that are in bond funds, let alone the types of bond funds held. The Morningstar Report relied on by the Complaint identifies the types of bonds that are held by the Blackrock TDFs, although it also does not include any percentages: long TIPS, intermediate government, long-term government, intermediate credit, long-term credit, and securitized. *See* Ex. 2 at 40.

### 2. The Comparator TDFs.

The Complaint alleges the "current" equity allocations of the Comparator TDFs.[11] Compl. ¶ 37 & n.8. Depending on the specific vintage, the Comparator TDFs have either more or less

---

[10] The "current" equity metrics alleged in the Complaint bear this out. For the four (4) longest-trajectory vintages included in Plaintiff's chart—the 2050, 2055, 2060, and 2065 funds—the BlackRock TDFs are alleged to have more equity than all the Comparator TDFs.  Compl. ¶ 37.

[11] There are two sets of Fidelity Freedom funds referenced in the Complaint. The "Fidelity Freedom" TDFs, which invest in actively managed funds, and the "Fidelity Freedom Index" TDFs,

equity than the BlackRock TDFs. For instance, as compared to the BlackRock TDFs, the Fidelity Freedom Index TDFs have 7% less in equities in the 2065 fund and 9% more in equities in the 2020 fund, whereas the Vanguard TDFs have 10% less in equities in the 2065 fund,and 2% more in the 2020 fund. *Id.* Beyond these limited allegations, however, the Complaint does not allege any other facts about the Comparator TDFs' holdings or investment strategy, including whether they are "through retirement" or "to retirement," invest in actively managed or passively managed index funds, or otherwise. And as with the BlackRock TDFs, the Complaint does not allege how the Comparators TDFs' underlying equity and bonds funds are allocated across the different types and categories of possible equity and bond funds. In short, the Complaint makes no allegations to demonstrate that the Comparator TDFs are meaningful comparators to the BlackRock TDFs.

Despite the Complaint's silence on these issues, the Morningstar Report cited in the Complaint provides at least some of this information about the Comparator TDFs:

- All of Plaintiff's Comparator TDFs—the American Funds, T. Rowe Price, Fidelity Freedom Index, and Vanguard TDFs—use "through retirement" glide paths, which means they all have a higher equity allocation as of the target retirement date than the BlackRock TDFs. Ex. 2 at 38 & internal exhibit 38.

- The American Funds and T. Rowe Price TDFs invest in *actively* managed underlying funds, whereas the Fidelity Freedom Index and Vanguard TDFs invest in *passively* managed underlying funds. *See id.* at 8 (T. Rowe Price), 22 (American Funds), 40 & internal exhibit 39 (Fidelity, Vanguard).

- The Fidelity Freedom Index and Vanguard TDFs—the only two passively managed alternatives discussed in the Complaint—invest in different categories of bonds than the BlackRock TDFs. *Id.* at 40 & internal exhibit 39.

- The Fidelity Freedom Index and Vanguard TDFs hold about 40% of the equity portion of their holdings in non-U.S. equities. *Id.* at 30.

---

which invest in passively managed funds. The Complaint lists the equity allocation of the Fidelity Freedom Index TDFs, but not the Fidelity Freedom TDFs, because the Complaint separately alleges that those Fidelity Freedom TDFs also are not prudent investments. Compl. ¶ 36 n.7.

- The American Funds and T. Rowe Price funds have "Gold" Morningstar analyst ratings, like the BlackRock Funds; the Vanguard and Fidelity Freedom Index TDFs have "Silver" analyst ratings. *Id.* at 19 & internal exhibit 21.

### D. **The Complaint's Claims.**

The Complaint asserts three claims, all based on the decision to offer and retain the BlackRock TDFs in the Plan's investment menu instead of one of the Comparator TDFs. In Count I, Plaintiff alleges that Booz Allen breached its fiduciary duties of prudence and loyalty under ERISA, 29 U.S.C. § 1104(a)(1)(A), (B). Compl. ¶¶ 66-70. In Count II, Plaintiff alleges that Booz Allen failed to adequately monitor the Committee, its performance, and its fiduciary process. *Id.* ¶¶ 71-79. And in Count III, Plaintiff alleges that, to the extent any defendant is not an ERISA fiduciary, that defendant is liable as a non-fiduciary who participated in a knowing breach of trust. *Id.* ¶¶ 80-82. The Complaint seeks to pursue claims on a class-wide basis on behalf of more than 44,000 participants reaching back more than six years. *Id.* ¶¶ 4, 53-65.

### III. **ARGUMENT**

### A. **Standard of Review.**

In assessing ERISA claims of fiduciary breach under Rule 12(b)(6), courts must apply the settled pleading standards from *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), by evaluating a complaint's allegations "as a whole" and "giv[ing] due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise," *Hughes*, 142 S. Ct. at 742; *see also, e.g.*, *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022); *CommonSpirit*, 37 F.4th at 1165. "Because the content of the duty of prudence turns on the circumstances … prevailing at the time the fiduciary acts," courts must undertake a "careful, context-sensitive scrutiny of a complaint's allegations" to "divide the plausible sheep from the meritless goats." *Hughes*, 142 S. Ct. at 742; *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Rule 12(b)(6) is an "important mechanism for weeding out meritless claims"

in the ERISA context. *Dudenhoeffer*, 573 U.S. at 425; *see also Albert*, 47 F.4th at 577. Among other reasons, this is because "the prospect of discovery" in these cases is "ominous" and "elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." *PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*St. Vincent*"), 712 F.3d 705, 718-19 (2d Cir. 2013).

**B.    The Complaint's Allegations, Even Accepted as True, Fail To State a Plausible Claim That Booz Allen Breached ERISA's Duty of Prudence.**

The Complaint's primary claim is that Booz Allen breached ERISA's duty of prudence. The duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). ERISA's prudence requirement is "an objective standard, focusing on *a fiduciary's conduct* in arriving at an investment decision, *not on its results*." *Plasterers' Loc. Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 216 (4th Cir. 2011) (emphases added). This makes sense. After all, and as many Courts of Appeals have said, ERISA demands "prudence, not prescience." *DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*, 920 F.2d 457, 465 (7th Cir. 1990); *Usenko v. MEMC LLC*, 926 F.3d 468, 473 (8th Cir. 2019) (same); *Graham v. Fearon*, 721 F. App'x 429, 437 (6th Cir. 2018) (same); *St. Vincent*, 712 F.3d at 716 (same). In turn, where a plaintiff fails to allege facts about the plan fiduciaries' process for selecting and monitoring investments, as here, they must allege sufficient circumstantial facts from which the court can infer that the fiduciaries' decision-making process was flawed. *St. Vincent*, 712 F.3d at 718-19.

Against these principles, Plaintiff's claim fails. The Complaint's sole circumstantial "fact" of imprudence is that the Plan offered the BlackRock TDFs. And the Complaint's sole basis for

challenging the BlackRock TDFs as imprudent is that four other target-date suites allegedly outperformed them at certain points in the relevant period. Compl. ¶¶ 27-29, 33, 36, 39.

These allegations fail to create any plausible inference of imprudence for three principal reasons: (1) Plaintiff fails to plausibly allege that the Comparator TDFs are meaningful benchmark comparisons to the BlackRock TDFs; (2) even if they were, Plaintiff's performance-focused criticisms of the BlackRock TDFs cannot show imprudence as a general matter, especially considering the publicly available market data rating the BlackRock TDFs as a strong and highly ranked target-date suite; and (3) Plaintiff's specific underperformance allegations show, at most, that the BlackRock TDFS may have modestly underperformed the Comparator TDFs at some points, while also showing that the BlackRock TDFs *outperformed* the Comparator TDFs at others.

### 1.    Plaintiff Fails to Plausibly Allege That the Comparator TDFs Are Meaningful Benchmarks and Comparators to the BlackRock TDFs.

To plausibly allege that "a prudent fiduciary in like circumstances would have selected a different fund based on the cost or performance of the selected fund, a plaintiff must provide a sound basis for comparison—a meaningful benchmark." *Meiners v. Wells Fargo*, 898 F.3d 820, 822 (8th Cir. 2018). This requires more than identifying alternatives with "some similarities" to the BlackRock TDFs. *Id*. at 823. It requires Plaintiffs to plead facts showing that their alternatives had similar investment strategies, asset allocations, and risk profiles to the BlackRock TDFs.

The Courts of Appeals to consider this principle have uniformly adopted it, in several cases affirming dismissal of claims that are practically indistinguishable from those alleged here.

In *Meiners*, for example, the Eighth Circuit affirmed Rule 12(b)(6) dismissal of claims challenging the prudence of Wells Fargo target-date funds by comparing their performance to that of Vanguard target-date funds—the *same* Vanguard TDFs in the Complaint here. 898 F.3d at 823. According to the court, the Vanguard funds were not a meaningful benchmark to the Wells Fargo

funds because they had a different asset allocation to bonds than the Wells Fargo funds. *Id.* at 823 & n.2; *cf. Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020) ("[A] complaint cannot simply make a bare allegation that costs are too high, or returns are too low" but "must provide a sound basis for comparison—a meaningful benchmark[.]").

The Ninth Circuit confronted a similar issue in *Davis v. Salesforce.com Inc.*, 2022 WL 1055557 (9th Cir. Apr. 8, 2022). There, the plaintiff alleged it was a fiduciary breach to offer *actively managed* JPMorgan target-date funds instead of lower-cost, *passively managed* target-date funds also managed by JPMorgan. The district court dismissed that claim because "although the JPMorgan target date blend funds and JPMorgan SmartRetirement funds may have some similarities, the JPMorgan target date blend funds, which plaintiffs allege have '*some* passive funds underlying [them]', are not meaningful benchmarks for the *actively* managed JPMorgan SmartRetirement funds." *See Davis v. Salesforce.com Inc.*, 2021 WL 1428259, at *5 (N.D. Cal. Apr. 15, 2021) (citing *Meiners*, 898 F.3d at 823). On appeal, the Ninth Circuit affirmed dismissal of that claim because "plaintiffs have not plausibly alleged that defendants breached the duty of prudence by failing to adequately consider passively managed mutual fund alternatives to the actively managed funds offered by the plan." *Davis*, 2022 WL 1055557, at *2 n.1.

And the Sixth Circuit in *CommonSpirit* considered the plausibility of fiduciary-breach claims based on a plan offering actively managed Fidelity Freedom Funds instead of the passively managed Fidelity Freedom Index target-date funds—the same Fidelity Freedom Index funds that Plaintiff invokes as a Comparator TDF here. 37 F.4th at 1167. The plaintiffs argued that the Fidelity Freedom Index target-date funds "are appropriate comparators to the Freedom Funds because they are sponsored by the same company, managed by the same team, and use a similar allocation of investment types" and glide path. *Id.* The Sixth Circuit held otherwise. As the court

explained, despite the overlap of some similarities, the Fidelity Freedom funds invested in actively managed funds whereas the Fidelity Freedom Index funds invested in passively managed funds, which meant they had "distinct goals and distinct strategies, making them inapt comparators." *Id.*[12]

For several reasons, the same principles animating those decisions dictate that the Comparator TDFs put forward here are not meaningful benchmarks for the BlackRock TDFs.

***First***, half of the Comparator TDFs—the American Funds and T. Rowe Price TDFs— invest in *actively managed* funds, whereas the BlackRock TDFs invest in *passively managed* funds. *See supra* 7-8, 9. According to the Complaint, this means that part of the BlackRock TDFs' strategy is to "*avoid* the risk of active management underperformance and style drift," which is necessarily not the case for the American Funds and T. Rowe Price TDFs, which *focus* on active management. Compl. ¶ 25. As a matter of law, then, the American Funds and T. Rowe Price TDFs are not—and cannot be—meaningful benchmarks for the BlackRock TDFs. *CommonSpirit*, 37 F.4th at 1167; *Salesforce.com, Inc.*, 2022 WL 1055557, at *2 n.1; *Wash. Univ.*, 960 F.3d at 485 (holding passively managed funds are not meaningful benchmarks for actively managed funds: "[c]omparing apples and oranges is not a way to show that one is better or worse than the other").

***Second***, the BlackRock TDFs are "to-retirement" funds whereas <u>all</u> of the Comparator TDFs utilize a "through-retirement" strategy. *See supra* 7, 9; *see also* Ex. 2 at 38 & internal exhibit 38 (listing the BlackRock TDFs in the to-retirement category and the Comparator TDFs in the through-retirement category). As the Complaint explains, to-retirement strategies "are managed to protect against the risk of a market decline significantly diminishing assets" whereas through-

---

[12] Other circuits have similarly reiterated the need for ERISA plaintiffs pressing imprudent-investment fiduciary-breach claims to plead a "meaningful benchmark" for the challenged investment(s). *See, e.g.*, *Albert*, 47 F.4th at 582 (7th Cir. 2022) (affirming dismissal of claim challenging plan investments because plaintiff did not provide "a sound basis for comparison").

retirement funds focus "on the risk of outliving savings." Compl. ¶ 24. The Complaint describes other strategy differences, too, as between the BlackRock TDFs and the Comparator TDFs, including that the BlackRock TDFs: (i) have "the industry's most aggressive glide path for investors further from retirement"; but then (ii) "de-risk"—*i.e.*, adopt a more conservative investment strategy—earlier than the Comparator TDFs. *Id*. ¶ 37. In other words, the face of the Complaint reveals that the BlackRock TDFs and the Comparator TDFs focus on "distinct goals and distinct strategies," which means they cannot be meaningful benchmarks for each other as a matter of law. *CommonSpirit*, 37 F.4th at 1167; *Salesforce.com, Inc.*, 2022 WL 1055557, at *2 n.1; *Wash. Univ.*, 960 F.3d at 485 (funds are not meaningful benchmarks where "[t]hey have different aims, different risks, and different potential rewards that cater to different investors").

*Third*, the Comparator TDFs have different equity holdings than the BlackRock TDFs. At a high level, the Complaint *admits* that the equity holdings of the Comparator TDFs are greater or lesser (depending on the fund and year) than the equity holdings in the BlackRock TDFs—with the Comparator TDFs having as much as 9% more in equities (*e.g.*, the T. Rowe Price 2030, 2025, 2020 TDFs and the Fidelity 2020 TDF) or 10% less in equities (*e.g.*, the Vanguard and American Funds 2065, 2060, 2055 TDFs) than the BlackRock TDFs. Compl. ¶ 37. Even at that high level, those distinctions matter. Moreover, all "equity" funds are not the same, yet the Complaint says nothing about how the various funds are invested within the broad "equity" category. For example, the Complaint does not allege that the Comparator TDFs have the same exposure to foreign equities as the BlackRock TDFs, or in the same countries (*e.g.*, emerging markets are different from developed markets, although both are foreign). *See* Ex. 2 at 30-31 (Vanguard and Fidelity TDFs have 40% foreign equity exposure, and American Funds TDFs have 25%). And the Complaint says nothing about whether the Comparator TDFs have the same focus on large-cap,

small-cap, or mid-cap equities, or "growth" or "value" investment styles as the BlackRock TDFs. *See id.* at 22 (noting that the American Funds TDFs have a "tilt" toward "mega- and large-cap" equities over small-cap value equities).[13] These details are crucial to determining whether and how the BlackRock and Comparator TDFs compare; the Complaint ignores them all.

**Fourth**, the Complaint says *nothing* about the bond or other holdings of the BlackRock TDFs or the Comparator TDFs. The Second Circuit in *St. Vincent* held that plaintiffs could not lump together different types of *mortgage* bonds—already a discrete subset of bonds—because agency, non-agency, jumbo, and subprime mortgage bonds each carry different potential risks and rewards. *See* 712 F.3d at 722-23. Here, Plaintiff includes no facts about any of the target-date suites' bond holdings at all, and instead simply assumes (or asks this Court to assume) that all bond investments are the same. Even the Morningstar Report incorporated into the Complaint makes clear that among the passively managed index-based target-date funds in the Complaint (BlackRock, Vanguard, and Fidelity), the *types* of bonds (putting aside the concentrations) held are materially different. *See* Ex. 2 at 40 & internal exhibit 39. For example, the Vanguard TDFs hold core aggregate, short-term TIPS, and non-U.S. bonds, whereas the BlackRock TDFs do not. *See id.* The Fidelity Freedom Index TDFs hold, among other things, core aggregate, short-term TIPS, short-Term government, and non-U.S. bonds—again, none of which are held by the

---

[13] Within the U.S. *domestic* equity universe, Morningstar has the following categories: US equity large-cap blend, US equity large-cap growth, US equity large-cap value, US equity mid-cap, US equity small-cap, plus several sector specific (e.g., healthcare, real estate) funds. *See* https://advisor.morningstar.com/Enterprise/VTC/MorningstarGlobalCategory_April2021.pdf. The Complaint says nothing about the actual or relative allocations of any of the TDFs to any of these categories. Of note, the American Funds TDF prospectuses explain that the 2040 through 2065 TDFs hold over 40% of their *total portfolio* in "growth funds." *See* https://www.capitalgroup.com/advisor/pdf/shareholder/mfgeprx-850-505961.pdf, last visited Oct. 10, 2022. *See also Meiners*, 898 F.3d at 822-23 (considering prospectuses and plan-related documents at Rule 12(b)(6)); *Wash. Univ.*, 960 F.3d at 484 n.3 (same); *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009) (same).

BlackRock TDFs. And finally, the BlackRock TDFs hold intermediate credit, long-term credit, and securitized bonds that are not part of the Vanguard or Fidelity TDFs portfolios. *Id.*

In short, the Comparator TDFs have different investment philosophies (active vs. passive), different investment strategies (through-retirement vs. to-retirement), and different types and amounts of equity and bond or other holdings (*e.g.*, private equity, hedge funds, real-estate) than the BlackRock TDFs. The Complaint acknowledges that these differences mean the Comparator TDFs are designed to address different risks than the BlackRock TDFs and cater to different investors. Compl. ¶¶ 24, 25 (explaining the different risks that passive and active funds, and the different risks that to-retirement and through retirement funds, try to address).

For all these reasons, or any one of them standing alone, the Comparator TDFs do not provide a "meaningful benchmark" for the BlackRock TDFs. And because Plaintiff's claim of fiduciary imprudence is grounded entirely on an inapt comparison of the BlackRock TDFs to those Comparator TDFs, it fails as a matter of law on this basis alone.

> **2.    Even If Plaintiff Had Pled Meaningful Benchmarks, the Court Cannot Infer Imprudence Merely Because the BlackRock TDFs Allegedly Underperformed a Handful of Other Target-Date Suites.**

Even if the Complaint did plausibly allege that the Comparator TDFs (or even some of them) were meaningful benchmarks for the BlackRock TDFs, the Complaint's allegation that the BlackRock TDFs generated lesser investment returns than a handful of other target-date families would still fail to plausibly create any inference of imprudence, as necessary to state a claim.

As myriad courts have held, an allegation of "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan fiduciaries failed to" prudently select or monitor investments. *White v. Chevron Corp.*, 2017 WL 2352137, at *20 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453, 455 (9th Cir. 2018) (holding that allegations that fiduciary "could have chosen different vehicles for investment that performed better" did not make it "more

plausible than not that any breach of a fiduciary duty had occurred"); *St. Vincent*, 712 F.3d at 718 (affirming dismissal because allegations "that better investment opportunities were available at the time of the relevant decisions" cannot state a claim). This makes sense, of course, because nothing in ERISA "requires a fiduciary to pick the best performing fund." *Meiners*, 898 F.3d at 823; *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *17 (S.D.N.Y. Oct. 7, 2019) ("ERISA does not require clairvoyance on the part of plan fiduciaries, nor does it countenance opportunistic Monday morning quarter-backing on the part of lawyers and plan participants who, with the benefit of hindsight, have zeroed in on the underperformance of certain investment options."). In short, a claim of imprudence cannot "come down to simply pointing to a fund with better performance." *CommonSpirit*, 37 F.4th at 1166. But that is all the Complaint attempts to do.

And even then, the Complaint's single-faceted performance attack on the BlackRock TDFs rests on comparisons to only a small segment of the target-date suuniverse. The Complaint alleges that there are over 28 different target-date series in the market. Compl. ¶ 24. And the Morningstar Report incorporated into the Complaint identifies over 40 different target-date series. *See* Ex. 2 at 12, internal exhibit 13; 21-22, internal exhibit 23. Yet the Complaint merely alleges that *four* suites performed better than the BlackRock TDFs, and only at certain points across the relevant period. That does not permit an inference that the BlackRock TDFs were imprudent investments.

The Complaint does not allege that the BlackRock TDFs' performance was below average, let alone so poor that offering those funds fell outside the "range of reasonable judgments" that fiduciaries make. *Hughes*, 142 S. Ct. at 742. And there is no legal difference between alleging that four funds out of 28 performed better and saying that one fund out of 28 performed better. Both averments confirm only that the fund at issue was not the best performing target-date suite during a particular period, nothing more. *Cf. Meiners*, 898 F.3d at 823-24 ("[T]he existence of a cheaper

fund does not mean that a particular fund is too expensive in the market generally or that it is otherwise an imprudent choice."). That cannot state a claim because, as discussed, "no authority requires a fiduciary to pick the best performing [target date] fund." *Id.* at 823; *see also CommonSpirit*, 37 F.4th at 1166 ("Nor does a showing of imprudence come down to simply pointing to a fund with better performance."). Indeed, were it otherwise, plaintiffs could state a fiduciary-breach claim against plans that offered the Vanguard, Fidelity, and T. Rowe Price TDFs, too, because the American Funds TDFs performed better than each of them at certain points. *See* Ex. 2 at 9, 21-22 & internal exhibit 23 (showing percentile rankings).[14]

Finally, Plaintiff's allegations are further undermined by ample public information reflecting the market's overwhelmingly positive assessment of the BlackRock TDFs. The Morningstar Report cited in the Complaint, for instance, reflects that the BlackRock TDFs have a "Gold" analyst rating—*the same* as the actively managed American Funds and T. Rowe Price TDFs, and *higher* than the "Silver" rating for the passively managed Vanguard and Fidelity TDFs.[15] *See* Ex. 2 at 19 & internal exhibit 21. The BlackRock TDFs also have above average or higher ratings for their People, Process, and Parent organization. *Id.* These are the same sorts of facts relied upon by the Sixth Circuit when it affirmed Rule 12(b)(6) dismissal of the target-date fund challenge in *CommonSpirit*. 37 F.4th at 1168 ("Morningstar gave the Freedom Funds and the Index Funds a 'Silver' rating and rated the Freedom Funds' management team and process as 'above average' or better."). As the Sixth Circuit explained, "[n]othing in these reports suggests

---

[14] In fact, the Morningstar Report shows that over the five-year period ending in December 2021, the BlackRock TDFs were in the 29th percentile while the Fidelity and Vanguard TDFs ranked lower, in the 35th and 40th percentiles, respectively. *See* Ex. 2 at 21-22 & internal exhibit 23.

[15] The Morningstar Report states that American Funds rating moved up from Silver in 2021 to Gold in 2022. *See* Ex. 2 at 19, internal exhibit 21. The BlackRock and other Comparator TDFs kept the same ratings from 2021 to 2022. *Id.* This means that the BlackRock TDFs *had a higher rating* than the American Funds, Vanguard, and Fidelity Freedom Index TDFs in 2021.

that the Freedom Funds' reputation was bad enough when viewed in the market as a whole that a prudent plan administrator should never have included them in the offerings or should have precipitously dumped them." *Id*. This same takeaway applies here.

Relatedly, the Complaint itself alleges that the BlackRock TDFs are the *third most popular* target-date suite in the market as of the end of 2021. Compl. ¶ 35. And the Morningstar Report shows that the BlackRock TDFs had net inflows of about *$20 billion* dollars in 2021, which is consistent with the same substantial investment inflows from 2020. Ex. 2 at 6-7. In other words, despite the BlackRock TDFs' investment performance from 2016-2021—or perhaps because of that investment performance—investors continue to strongly prefer those funds. And if that were not enough, Plaintiff's own lawyers have cited the BlackRock TDFs' strong investment performance in trying to support claims that defendants in another case breached their fiduciary duties by not offering BlackRock TDFs in their company's 401(k) plan. *See Wehner v. Genentech Inc.*, Case No. 20-cv-6894, Dkt. No. 46 ¶ 6 (N.D. Cal. Mar. 1, 2021).

In short, Plaintiff's myopic focus on the BlackRock TDFs' alleged investment underperformance as compared to a handful of other target-date families—particularly when balanced against the overwhelming public information reflecting the strength and popularity of the BlackRock TDFs—simply cannot support a claim of imprudence.

### 3. Apart From the General Premise That Underperformance Alone Cannot Show Imprudence, Plaintiff's Specific Allegations Would Not Suffice, Especially Given the Complaint's Recognition That the BlackRock TDFs Recently *Outperformed* the Comparator TDFs.

Finally, while the Complaint's performance-focused criticisms of the BlackRock TDFs are legally deficient as a general matter for all the reasons explained, the specific allegations that Plaintiff proffers here do not even hold up on their own terms across the relevant period.

20

Plaintiff decries the BlackRock TDFs as "vastly inferior retirement solution" with "consistently deplorable performance." Compl. ¶¶ 33, 43. In support, the Complaint points to some two-dozen charts that purport to compare three-year and five-year annualized returns at the end of each quarter between 2016 and 2022 for eight vintages of the BlackRock TDFs against the same vintages of the Comparator TDFs. The charts assign a quarterly ranking to each BlackRock TDF, where "1" means the fund performed first among the group and "5" means it was last. *Id.* ¶ 39. The information in those charts does not support the hyperbolic criticisms Plaintiff lodges.

For starters, the most that the Complaint's allegations show is that the BlackRock TDFs modestly underperformed the Comparator TDFs over certain selected periods. Take the BlackRock 2050 TDF as an example—one of the only two funds that Plaintiff alleges he personally selected. *See* Compl. ¶ 9. As of Q3 2019, in the heart of the putative class period, the Complaint alleges that the while the BlackRock 2050 TDF ranked "last" among the Comparator TDFs, it only underperformed the "Best Performing Comparator TDF" by less than 1% on both a three- and five-year basis (0.84% over three years, and 0.99% over five years). *Id.* ¶ 39 at 21.

Even if investment underperformance by itself could state a plausible claim of imprudence in some theoretical case (and the case law dictates otherwise), this sort of modest performance discrepancy is surely not enough. *See, e.g.*, *Gonzales v. Northwell Health, Inc.*, 2022 WL 4639673, at *8 (S.D.N.Y. Sept. 30, 2022) (finding that rolling three- and five-year underperformance ranging from 0.32% to 2.57% was "not the type of substantial underperformance over a lengthy period that gives rise to a plausible inference that a prudent fiduciary would have removed these funds from the plan's menu of options"); *Forman v. TriHealth, Inc.*, 563 F. Supp. 3d 753, 764 (S.D. Ohio 2021) (finding underperformance ranging from 1.00% to "just over" 2.00% was "simply too small to raise a plausible breach of the fiduciary duty claim"), *aff'd in relevant part*, 40 F.4th 443 (6th

Cir. 2022). In other words, Plaintiff's performance-focused criticisms—apart from missing the mark generally for the reasons explained—are insufficient for these additional reasons.

And to drive this point home, consider the Complaint's allegations about the BlackRock TDFs' performance against the Comparator TDFs in more recent periods. The Complaint's charts show that the BlackRock TDFs ranked "first" or "second" based on the three- and five-year periods ending in Q1 and Q2 2022, and that most ranked at least "3" or "4" since the start of 2021. Using the BlackRock 2050 TDF again as an example, the fund's three- and five-year annualized returns ranked "1" or "2" in every quarter of 2022 and ranked "3" or "4" in every quarter of 2021. Compl. ¶ 39 at 23-26. This means that across the 5-year annualized period from 2017 ending in Q1 2022— *i.e.*, *virtually the entire period implicated by Plaintiff's claims*—the BlackRock 2050 TDF performed better than all but one of the Comparator TDFs. The Complaint itself shows this.

The Complaint additionally reveals the BlackRock TDFs outperformed the Vanguard and Fidelity TDFs—again, the only Comparator TDFs that employ a similar passive management strategy as the BlackRock TDFs—on a rolling five-year basis over the last six quarters. Compl. ¶ 43 at 29, 31. If the Plan fiduciaries had replaced the BlackRock TDFs with one of those alternatives, as Plaintiff says should have been done, participants would have missed out on this positive performance and the accompanying gains. Indeed, under the sweeping and monolithic theory that Plaintiff alleges, Booz Allen would have arguably been in breach of its fiduciary duties during that period if it had *not* offered the better-performing BlackRock TDFs. That is why "the duty of prudence does not compel ERISA fiduciaries to reflexively jettison investment options in favor of the prior year's top performers." *Patterson*, 2019 WL 4934834, at *11.

In short, the Complaint's allegations of modest underperformance by the BlackRock TDFs versus the Comparator TDFs at certain points—especially when balanced against the BlackRock

TDFs' admittedly strong performance against the Comparator TDFs in more recent periods—fails to demonstrate any inference of imprudence or fiduciary breach.

### C.   Plaintiff's Secondary Claims Fail as a Matter of Law.

Apart from the Complaint's primary claim of fiduciary imprudence, Plaintiff also fails to state plausible claims for breach of ERISA's duty of loyalty, Compl. ¶ 26, for failure to monitor, *id*. ¶¶ 71-79, or for "knowing participation" in fiduciary breaches by non-fiduciaries, *id*. ¶¶ 80-82.

*First*, Plaintiff fails to plead any allegations to support his disloyalty claim distinct from his allegations of fiduciary imprudence based on the BlackRock TDFs' alleged underperformance. Because ERISA's duty of loyalty stands independent from the duty of prudence, a plaintiff "must do more than simply recast purported breaches of the duty of prudence as disloyal acts." *Smith v. CommonSpirit Health*, 2021 WL 4097052, at *12 (E.D. Ky. Sept. 8, 2021), *aff'd*, 37 F.4th 1160 (6th Cir. 2022); *see also Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) (same, where complaint did not allege facts to show that the defendant selected investments "to enrich itself at participants' expense"). Yet that is all this Complaint tries to do.

*Second*, the Court should dismiss Plaintiff's failure-to-monitor claim because it is likewise derivative of Plaintiff's claim for breach of the duty of prudence, and so fails along with it. *See In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 602, 614 (D. Md. 2010) (finding that failure to monitor fiduciaries "do[es] not provide independent grounds for relief, but rather depend upon the establishment of an underlying breach of fiduciary duty cognizable under ERISA").

*Third*, Plaintiff's alternative claim that any non-fiduciary defendant is liable under a "knowing participation theory" suffers the same fate. For starters, Plaintiff's failure to plead any underlying breach of fiduciary duty requires dismissal of this derivative claim. *E.g.*, *Smith*, 2021 WL 4097052, at *13. But even apart from his failure to allege a plausible underlying breach,

Plaintiff does not identify which defendants are subject to this claim, much less facts from which "knowing" participation in a breach by any such defendant could be inferred. *See, e.g.*, *Coyer v. Univar Sols. USA, Inc.*, 2022 WL 4534791, at *7 (N.D. Ill. Sept. 28, 2022) (dismissing similar claim for failure to "plausibly plead[] allegations of knowledge" of any breach). Instead, this is exactly the type of "unadorned, the-defendant-unlawfully-harmed-me accusation" that fails to state a plausible claim as a matter of law. *Iqbal*, 556 U.S. at 678.

## IV.  <u>CONCLUSION</u>

Plaintiff's Complaint does not and cannot meet Rule 12(b)(6)'s plausibility bar. Plaintiff's thin and singular theory of fiduciary breach—that the Plan's fiduciary process *must* have been imprudent because the BlackRock TDFs allegedly *could have* performed better—rests on so many unsupported and unsupportable allegations that it collapses under its own weight.

The Complaint fails to satisfy even the most foundational requirement of comparing the BlackRock TDFs to meaningful benchmarks, and its myopic focus on alleged investment underperformance is not enough, regardless, to demonstrate imprudence, as ERISA's fiduciary duties are rooted in process, not results. And to the extent Plaintiff wants to focus on performance, it certainly does not demonstrate that the BlackRock TDFs were "deplorable," as he suggests. The "Gold"-rated BlackRock TDFs are one of the most popular, highly ranked, and low-cost target-date suites in the market, as shown by documents cited in Plaintiff's own Complaint. And if that were not enough, the Complaint itself alleges that many of the BlackRock TDFs outperformed Plaintiff's alternative investments during meaningful portions of the putative class period.

At bottom, the most that this Complaint shows is that a handful of other hand-picked target-date suites—with admittedly different investment goals and risk-management strategies than the BlackRock TDFs—modestly outperformed the BlackRock TDFs in certain respects during some stretches of the putative class period. That is all. But that outcome is commonplace in the financial

markets. Fiduciaries of employer-sponsored retirement plans are no better equipped with crystal

balls and time machines than Wall Street banks or day traders. And that is why ERISA requires

"prudence, not prescience." If class-action lawyers could mount lawsuits anytime a plan did not

offer the best-performing funds, it would eviscerate the "careful balancing" that Congress struck

in ERISA: protecting employees' retirement savings while still encouraging employers to

voluntarily offer retirement plans in the first place. *Dudenhoeffer*, 573 U.S. at 524.

In the Supreme Court's words, this Complaint is a "meritless goat," not a "plausible sheep."

*Id.* at 425. The Court should dismiss it with prejudice under Rule 12(b)(6).

Dated: October 10, 2022                  Respectfully submitted,

                                         *s/ Matthew J. Sharbaugh*
                                         Matthew J. Sharbaugh, VSB 91219
                                         Frank H. Williams, III (admitted *pro hac vice*)
                                         Morgan, Lewis & Bockius LLP
                                         1111 Pennsylvania Avenue, NW
                                         Washington, DC 20004
                                         T: (202) 739-3000
                                         F: (202) 739-3001
                                         matthew.sharbaugh@morganlewis.com
                                         frank.williams@morganlewis.com

                                         Jeremy P. Blumenfeld (admitted *pro hac vice*)
                                         Morgan, Lewis & Bockius LLP
                                         1701 Market Street
                                         Philadelphia, PA 19103
                                         T: (215) 963-5000
                                         F: (215) 963-5001
                                         jeremy.blumenfeld@morganlewis.com

                                         Sean K. McMahan (admitted *pro hac vice*)
                                         Morgan, Lewis & Bockius LLP
                                         1717 Main St., Suite 3200
                                         Dallas, TX 75201
                                         T: (214) 466-4102
                                         sean.mcmahan@morganlewis.com

                                         *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2022, I caused to be served a true and correct copy of

the foregoing on the following counsel of record by the Court's CM/ECF system:

Glenn E. Chappell (Bar No. 92153)
Tycko & Zavareei LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Tel.: (202) 973-0900
Fax: (202) 973-0950
gchappell@tzlegal.com

James C. Shah
Alec J. Berin
Miller Shah LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
jcshah@millershah.com
ajberin@millershah.com

James E. Miller
Laurie Rubinow
Miller Shah LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
jemiller@millershah.com
lrubinow@millershah.com

Kolin C. Tang
Miller Shah LLP
19712 MacArthur Blvd.
Irvine, CA 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
kctang@millershah.com

*s/ Matthew J. Sharbaugh*
Matthew J. Sharbaugh, VSB 91219
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
matthew.sharbaugh@morganlewis.com

26